

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RONNIE PARKER** | * | **CIVIL ACTION NUBER: 03-0545** |
| | * | |
| **VERSUS** | * | **SEC. R MAG. 3** |
| | * | |
| **ROWAN COMPANIES, INC.** | * | **JUDGE VANCE** |
| | * | |
| | * | **MAGISTRATE JUDGE KNOWLES** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ROWAN COMPANIES, INC.'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL

Defendant, ROWAN COMPANIES, INC.(ROWAN), moves this Honorable Court to disqualify Laurence E. Best, Peter S. Koeppel, and the law firm of Best Koeppel as counsel for the Plaintiff pursuant to the standards of the legal profession, the public interest, the litigants' rights, and the law of this Circuit, including, but not limited to, Rules 1.9 and 1.10 of the Louisiana Rules of Professional Conduct. Laurence E. Best, Peter S. Koeppel, and the law firm of Best Koeppel formerly represented ROWAN in numerous suits over a period of approximately 15 years. Therefore, neither Laurence E. Best, Peter S. Koeppel, nor the law firm of Best Koeppel may represent RONNIE PARKER in the present suit against its former client. Accordingly, this



Honorable Court should disqualify the foregoing from any involvement in this suit.  The reasons supporting the motion are more fully set forth in the attached memorandum.  In support of its motion, ROWAN attaches the following exhibits:

1.    7 Martindale-Hubbell Law Directory LA 245B, 246B

2.    Affidavit of William P. Hedrick

    2A.    March 12, 2002, Rowan fax memorandum

    2B.    March 24, 2003, letter from Rowan requesting voluntary withdrawal

    2C.    March 31, 2003, letter from Mr. Best refusing to withdraw

3.    March 5, 2002, letter from Best Koeppel

4.    March 12, 24, 2003, letters from Best Koeppel

5.    September 4, 2002, letter from John W. Lee, Jr.

6.    May 16, 2002, letter from John W. Lee, Jr.

Respectfully submitted,

**HURLBURT, PRIVAT & MONROSE**
(A Professional Law Corporation)

_____
**DAVID A. HURLBURT, T.A. - #13912**
**GEORGE D. ERNEST III -#16903**
Post Office Drawer 4407
Lafayette, Louisiana 70502
(337) 237-0261
**Attorneys for ROWAN COMPANIES, INC.**

# EXHIBIT
# 1

trict of Louisiana and U.S. Court of Appeals, Fifth Circuit; 1990, U.S. Court of Appeals, Eleventh Circuit; 1992, U.S. District Court, Southern District of Texas; 1993, U.S. Supreme Court; 1994, Texas; 2000, U.S. District Court, Western and Northern Districts of Texas. *Education:* Johns Hopkins University (B.A., 1980); Tulane University (J.D., 1982). Author: "McDermott v. AmClyde and the Rule of Proportionate Fault: Maritime Law Leads in Developing a Fair, Consistent, and Efficient Credit for Settlement Rule," 19 Tul.Mar.L. J. 261 (1995). *Member:* Louisiana State and American (Member, Section on Litigation) Bar Associations, State Bar of Texas; Maritime Law Association of the United States.

W. BARTLETT ARY, born New Orleans, Louisiana, February 28, 1960, admitted to bar, 1987, Louisiana; 1988, U.S. District Court, Western and Middle Districts of Louisiana; 1989, U.S. Court of Appeals, Fifth Circuit; 1992, U.S. District Court, District of the U.S. Virgin Islands; 1994, U.S. Court of Appeals, Third Circuit; 1995, U.S. Virgin Islands and Florida; 1997, U.S. District Court, Eastern District of Louisiana and U.S. Supreme Court. *Education:* Louisiana State University (B.A., 1983; J.D., 1986). Assistant Attorney General: Louisiana, 1988-1992, 1998-2000; U.S. Virgin Islands, 1992-1998. *Member:* U.S. Fifth Circuit, Louisiana State and Virgin Islands Bar Associations; The Florida Bar. National Association of Attorneys General. REPORTED CASES: Kazmier v. Widmann, 225 F.3d 519 (5th Cir. 2000).

SUZANNE M. RISEY, born New Orleans, Louisiana, October 4, 1970, admitted to bar, 1998, Louisiana and Connecticut; 2001, New York *Education:* Louisiana State University (B.S., 1994); New York Law School (J.D., 1997). Legal Editor Intern, Matthew Bender, New York, N.Y., 1996-1997 *Member:* Louisiana State, Connecticut, New York State and American Bar Associations.

PEGGY WALLACE, born New Orleans, Louisiana, July 16, 1957; admitted to bar, 1983, Louisiana; 1984, U.S. District Court, Eastern, Middle and Western Districts of Louisiana; 1985, U.S. Court of Appeals, Fifth Circuit, 1996, North Carolina. *Education:* University of New Orleans, (B.A., Political Science, 1979), Loyola University (J.D., magna cum laude, 1983). Member, Loyola Law Review. *Member:* Louisiana State Bar Association.

SUSAN R. LAPORTE, born New Orleans, Louisiana, December 3, 1951. admitted to bar, 1989, Louisiana. *Education:* H. Sophie Newcomb Memorial College (B.A., magna cum laude, 1976); Loyola University (J.D., cum laude, 1989). Articles-Comments Editor, Loyola Law Review, 1988-1989. Law Clerk to Chief Justice Pascal F. Calogero, Jr., Louisiana Supreme Court, 1989-1990 Member, National Moot Court Team. *Member:* New Orleans, Louisiana State and American Bar Associations. *Email:* srlaporte@bestkoeppel.com

---

## BEST KOEPPEL

*A PROFESSIONAL LAW CORPORATION*
*Established in 1991*
*2030 ST. CHARLES AVENUE*
*NEW ORLEANS, LOUISIANA 70130*
*Telephone: 504-598-1000*
*Telecopier: 504-524-1024*

*Houston, Texas Office:* 1001 West Loop South, Suite 100, 77027. Telephone: 713-964-9840. Telecopier: 713-622-5513.

*General Civil Defense Litigation in State and Federal Courts and Administrative Agencies. Trials and Appeals. Admiralty, Insurance, Workers Compensation, Products Liability, Toxics, Professional Liability and General Casualty.*

*FIRM PROFILE: Best Koeppel opened its doors in New Orleans, Louisiana on May 1, 1991. In mid 1992 the firm opened its Houston, Texas office. Three of the firm's members are admitted in Texas as well as Louisiana. Our firm is listed in Best's Directory of Recommended Insurance Attorneys. The firm specializes in marine, energy and insurance defense litigation. We are also well qualified and experienced in state and federal workers compensation, products liability, toxic torts, labor law and general casualty litigation. Our litigators have developed a reputation for both responsive service and tenacity as evidenced by an excellent record of courtroom success. Litigation services are provided in both the state and federal courts of Louisiana and Texas. Services are also available in Mississippi utilizing local counsel for purposes of enrollment.*

LAURENCE E. BEST, born New Orleans, Louisiana, June 14, 1949; admitted to bar, 1974, Louisiana; 1975, U.S. Court of Appeals, Fifth Circuit; 1979, U.S. Supreme Court; 1981, U.S. Court of Appeals, Eleventh Circuit and U.S. District Court, Eastern, Middle and Western District of Louisiana; 1991, Texas. *Education:* University of New Orleans (B.S., Accounting, 1971); Tulane University of Louisiana (J.D., 1974). *Member:* U.S. Fifth Circuit, Louisiana State, Federal and American Bar Associations; State Bar of Texas; Louisiana Association of Defense Counsel; Maritime Law Association of the United States; Defense Research Institute. *Email:* bstkpplesq@aol.com

PETER S. KOEPPEL, born New York, New York, April 7, 1956; admitted to bar, 1982, Louisiana and U.S. District Court, Eastern, Middle and Western Districts of Louisiana, U.S. District Court, Eastern and Southern Districts of Texas; 1983, U.S. Court of Appeals, Fifth Circuit; 1992, Texas. *Education:* Georgetown University (A.B., 1978); Loyola University (J.D., 1982). *Member:* Louisiana State and American Bar Associations; State Bar of Texas; New Orleans Association of Defense Counsel; Louisiana Association of Defense Counsel.

R. JEFFREY BRIDGER, born Fayetteville, North Carolina, September 30, 1957; admitted to bar, 1982, Louisiana; 1983, U.S. District Court, Eastern District of Louisiana and U.S. Court of Appeals, Fifth Circuit; 1990, U.S. Court of Appeals, Eleventh Circuit; 1992, U.S. District Court, Southern District of Texas;

*(This Listing Continued)*

---

CINDY GATELY HALL, born New Orleans, Louisiana, January 7, 1957; admitted to bar, 1983, Louisiana and U.S. District Court, Eastern District of Louisiana. *Education:* University of New Orleans (B.A., 1980); Loyola University (J.D., 1983). *Member:* Louisiana State Bar Association.

### SPECIAL COUNSEL

DON PAUL LANDRY, born New Orleans, Louisiana, October 31, 1967; admitted to bar, 1994, Louisiana; 1996, U.S. District Court, Eastern, Middle and Western Districts of Louisiana; 2001, U.S. Court of Appeals, Fifth Circuit. *Education:* Louisiana State University (B.A., 1989); Tulane University (J.D., 1994). Monthly Publication in *The Legal Column.* St. Charles Herald-Guide. Member, Board of Directors, Louisiana Center for Law and Civic Education. Member, Board of Directors, Young Lawyers Division, New Orleans Chapter. *Member:* St. Charles Parish, Louisiana State, Federal and American Bar Associations, St. Thomas More Catholic Lawyers Association.

### LEGAL SUPPORT PERSONNEL

#### PARALEGAL

DEBORA N. DUFRENE, born New Orleans, Louisiana, July 24, 1962. *Education:* Delgado Community College; Tulane University (Paralegal Studies). PRACTICE AREAS: File Organization; Medical Records Summarization; Preparation of Discovery and Responses to Discovery; Deposition Summarization; Scheduling and Noticing Depositions.

REPRESENTATIVE CLIENTS: ALFA Mutual Insurance Co.; First State Management Group, Inc.; Hartford Insurance Co.; Lexington Insurance Co.; Lexington Insurance Co. (U.K.); New England Insurance Co.; Gard Services-Energy (Norway); CITGO Petroleum Corporation; Elevating Boats, Inc., Rowandrill, Rowan Companies, Inc.; State of Louisiana, Office of Risk Management; Louisiana Insurance Guarantee Association.
REFERENCES: available upon request.

# EXHIBIT 2

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RONNIE PARKER** | * | **CIVIL ACTION NUMBER 03-0545** |
| | * | |
| **VERSUS** | * | **SEC. R MAG. 3** |
| | * | |
| **ROWAN COMPANIES, INC.** | * | **JUDGE VANCE** |
| | * | |
| | * | **MAGISTRATE JUDGE KNOWLES** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## AFFIDAVIT OF WILLIAM P. HEDRICK

Before me, the undersigned notary public, personally came and appeared, William P. Hedrick, who, after being duly sworn, did depose and state that:

1.

My name is William P. Hedrick. I am over the age of 18. I am competent to testify and have personal knowledge of the facts in this affidavit.

2.

I am employed by Rowan Companies, Inc. (Rowan) and have been employed by Rowan since December 27, 1976. My current position is HSE (Health Safety and Environmental) Manager. I have held that position since approximately 1999. Prior to that time and since the early 1980's, my title was Safety Director and Claims Manager.

3.

In my capacity as Safety Director and Claims Manager, and subsequently as the HSE Manager, I supervised and was and still am in overall charge of handling claims made by Rowan employees who claimed to have been injured in the course and scope of their employment with Rowan. I was the primary contact with outside counsel representing Rowan in injury-related claims. As HSE Manager, I manage all personal injury functions for Rowan, including determining assignment of counsel and overall litigation strategy. In addition, I usually serve as Rowan's company representative at trial and at corporate depositions of the company.

4.

In connection with managing claims at Rowan, I had a long-standing attorney client relationship with Laurence E. Best and subsequently Peter S. Koeppel and their law firms. During the many years of that attorney client relationship, I, on Rowan's behalf, sought legal advice from Messrs. Best and Koeppel on a number of wide ranging subjects including maritime law and employment related issues, as they relate to personal injury claims, such as employee benefits, employee disability and the impact employee injuries have on such things as disability and employment. For the purposes of this affidavit I will focus on matters related to the Parker matter.

5.

Mr. Best began representing Rowan approximately 15 years ago, around 1987. Mr. Koeppel began representing Rowan prior to June of 1991, after Mr. Best began representing Rowan.

2

6.

During the last approximately 15 years, Mr. Best and/or Mr. Koeppel represented Rowan in over 60 cases. During that time, Rowan paid Messrs. Best and Koeppel and/or their firms over $2.8 million in legal fees.

7.

Messrs. Best and Koeppel primarily represented Rowan in the defense of personal injury claims by Rowan employees such as roustabouts, floormen, drillers, derrickmen, tour pushers, shaker hands, and crane operators. The majority of those claims involved Jones Act negligence, unseaworthiness, and maintenance and cure causes of action arising out of incidents on Rowan's fleet of mobile offshore drilling units in the Gulf of Mexico.

8.

Among its other operations, Rowan operates a fleet of mobile offshore drilling units (MODUS) otherwise known as jack-up drilling vessels in the Gulf of Mexico. Additionally, Rowan owns and operates one non self-propelled Semi-submersible MODU. Its vessels are similar in nature in that they are moved from various well site locations in the Gulf of Mexico. Once at a particular site, the jack-up vessel is "jacked up" above the water to conduct drilling operations. The crews on our MODUS consist of roustabouts, floorhands, drillers, tour pushers, derrickmen, crane operators, and Offshore Installation Managers (OIM) who assist in drilling wells for Rowan's customers. Each MODU also has a Rig Manager, whose duties are both aboard and shore-based.

9.

During the many years that Messrs. Best and Koeppel represented Rowan, I was in most cases their primary contact at Rowan, although others at Rowan's corporate office had contact

with them.  Over the years, I communicated with them on thousands of occasions by phone, fax, e-mail, written correspondence and face-to-face meetings.  I frequently sought their advice and counsel on litigation matters including trial strategies and settlement tactics.  I frequently conveyed to them confidential information about Rowan's internal practices, policies, and procedures.  With the assignment of each case, I usually provided them with Rowan's confidential claims files, which contained highly confidential internal communications regarding Rowan's investigation after an incident occurred.  I fully expected those communications to remain confidential.

10.

From time to time, I also sought counsel and advice from Messrs. Best and Koeppel regarding other matters, such as maintenance and cure issues which were not necessarily in litigation.  For example, I provided them with a confidential study prepared by an expert retained by Rowan regarding the rate of maintenance and cure.  That study was periodically updated at my request.  I provided copies of the periodic updates to Messrs. Best and Koeppel in addition to other outside counsel retained by Rowan.

11.

Messrs. Best and Koeppel were also on my mailing list for outside counsel.  When important court decisions were rendered in the maritime and employment law field, as they relate to personal injury claims, I would often seek their advice as to how such decisions might affect Rowan in the future.  In addition, Mr. Best, and his former law partner Patrick Klotz, spoke at Rowan's Supervisor's Training Seminar in 1990.

4

12.

While representing Rowan over the past approximately 15 years, Messrs. Best and Koeppel retained expert witnesses in litigation cases while defending Rowan. On numerous occasions, Messrs. Best and Koeppel retained the services of experts including Fred Leibkemann (mechanical engineer), Calvin Barnhill (petroleum engineer), Cornelius Gorman (vocational rehabilitation expert), J. Stuart Wood (economist), Randolph Rice (economist), Dr. Dan Scullin (radiologist) and Christopher Cenac (orthopedic surgeon). Messrs. Best and Koeppel have worked closely with these experts and have communicated with them on numerous occasions. They have also attended depositions in which opposing counsel deposed those experts. They have also offered the experts' testimony at trials while defending Rowan.

13.

Some or all of the experts mentioned above either have been or will most likely be retained by Rowan in the Parker matter in which Messrs. Best and Koeppel currently represent Mr. Parker.

14.

As an example of the 60 plus cases in which Messrs. Best and Koeppel represented Rowan over the last approximately 15 years, Mr. Best defended Rowan in the matter entitled *Timothy Tally v. Rowan Companies, Inc.* in the 16th Judicial District Court in St. Mary Parish, which suit was filed on January 21, 1998. On October 24, Mr. Tally (a roustabout) became ill aboard Rowan's MODU, the GILBERT ROWE (Rig 038), a jack-up drilling vessel similar in nature to the CECIL PROVINE (Rig 039) where Mr. Parker's accident occurred. Mr. Tally alleged Jones Act negligence, unseaworthiness, and maintenance and cure causes of action -- the same causes of action asserted by Mr. Parker in the current litigation. Mr. Tally alleged that

Rowan failed to provide him with necessary medical treatment; failed to provide transportation to a hospital or other health care provider; and failed to properly respond to his medical needs, which he contended aggravated his condition. He sought damages for physical and mental pain and suffering, maintenance and cure, as well as lost wages and lost future earning capacity. The *Tally* matter was compromised and ultimately dismissed around October 2000.

15.

During the course of the *Tally* litigation, Mr. Tally's counsel took Rowan's corporate deposition. I was the designated corporate representative at the deposition. Some of the topics of the deposition as set forth in the corporate deposition notice were Rowan's policies and procedures for removing injured workers from the rig and Rowan's policies and procedures for providing medical treatment to injured personnel on drilling rigs. Mr. Best and Mr. Koeppel assisted me in preparing for the deposition, during which time we discussed Rowan's policies and procedures. Messrs. Best and Koeppel attended the deposition, representing Rowan.

16.

Should Parker's counsel take the corporate deposition of Rowan, I will most likely again serve as the corporate representative. In addition, I anticipate that I may be a witness in the Parker litigation.

17.

In the *Tally* matter, James (J.L.) Rawson III, the offshore installation manager aboard the GILBERT ROWE at the time of Tally's incident was also deposed. Mr. Best and Mr. Koeppel met with Mr. Rawson on several occasions. Mr. Koeppel also defended Mr. Rawson's deposition as Rowan's counsel.

18.

At the time of Mr. Parker's incident on or about September 13, 2001, Mr. Rawson served as the rig manager on the CECIL PROVINE.  Mr. Rawson is expected to be a witness in the Parker litigation as well.

19.

In the *Tally* matter, Mr. Best's firm, on Rowan's behalf, retained and/or consulted with a number of experts including Cornelius Gorman (vocational rehabilitation expert), J. Stuart Wood (economist), and Dr. Christopher Cenac, who coordinated the medical experts in a number of different fields.  Drs. Gorman, Wood, and Cenac have been retained as potential experts in the Parker litigation as well.

20.

Mr. Best & Mr. Koeppel represented Rowan in another matter entitled *Fincannon v. Rowan Companies, Inc.* in the 16th Judicial District Court in St. Mary Parish.  In this suit, Jason Fincannon was injured on or about May 17, 2000 aboard the CECIL PROVINE, the same MODU on which Mr. Parker was working at the time of his incident.  Mr. Fincannon later died from his injuries.  His representatives filed suit against Rowan on September 21, 2000.  The case settled prior to trial and was dismissed around September 2001.  The suit alleged Jones Act negligence and unseaworthiness causes of actions against Rowan.  Damages sought included pre-death pain and suffering and loss of support in the form of Mr. Fincannon's lost future wages.

21.

In the *Fincannon* matter, I served as the Rowan contact person. As such, I communicated with Mr. Best & Mr. Koeppel on all facets of the litigation including potential trial strategy and settlement. I attended the mediation of the case with Mr. Best & Mr. Koeppel.

22.

While defending Rowan in the *Fincannon* matter, Mr. Koeppel, on December 12, 2000, traveled to the CECIL PROVINE and inspected and photographed the rig. Mr. Koeppel then provided me with a detailed and confidential written report on the outcome of his inspection. He provided me with his legal opinion as to how the facts he developed during the inspection might impact Rowan's position in the litigation. As stated previously, the CECIL PROVINE is the same MODU upon which Mr. Parker claims to have been injured.

23.

In the *Fincannon* matter, James Rawson, the rig manager on the CECIL PROVINE was deposed. Either or both Mr. Best or Mr. Koeppel prepared Mr. Rawson for his deposition. Both Messrs. Best and Koeppel also attended Mr. Rawson's deposition as Rowan's counsel. As stated previously, Mr. Rawson is a potential witness in the Parker litigation.

24.

In the *Fincannon* matter, Jason R. (Ray) Cranford was a tour pusher on board the CECIL PROVINE at the time of Mr. Fincannon's incident. At the time of the Parker incident, Mr. Cranford was the OIM (Offshore Installation Manager) aboard the CECIL PROVINE. In the *Fincanon* matter, either Mr. Best or Mr. Koeppel interviewed Mr. Cranford. Mr. Cranford may also be a witness in the Parker litigation. In addition, either Mr. Best or Mr. Koeppel, in the

*Fincannon* matter interviewed at least 2 other members of the drilling crew who were also on Mr. Parker's tour (shift) at the time of Mr. Parker's accident.

25.

On or about February 19, 2002, I had breakfast with Messrs. Best and Koeppel. Following breakfast, I had a meeting with Mr. Best and Mr. Koeppel during which Mr. Best expressed concern about continuing the relationship between Rowan and his firm.  I expressed an interest in continuing our long-standing relationship.  I had no other conversations with either Messrs. Best or Koeppel on that subject until I received their letter dated March 5, 2002 formally notifying Rowan of their decision to unilaterally terminate their long-standing relationship with Rowan.  At that time, Messrs. Best and Koeppel were representing Rowan in the *Cantner* litigation pending in the 16th Judicial District Court in St. Mary Parish.  Joseph Cantner was a Rowan roustabout who claims to have injured his knee aboard the ROWAN FORT WORTH, another MODU in Rowan's fleet similar in nature to the CECIL PROVINE.  Mr. Cantner filed suit against Rowan on or about November 5, 2001, approximately 4 months before Messrs. Best and Koeppel decided to terminate their relationship with Rowan.

26.

In his suit, Mr. Cantner asserts Jones Act negligence and unseaworthiness causes of actions, the same causes of action asserted by Mr. Parker.  Mr. Cantner also seeks damages for physical and mental pain and suffering as well as past and future lost wages.  In the Cantner matter, Drs. Cenac and Wood, and Mr. Barnhill were retained as experts by Mr. Best and/or Mr. Koeppel.

9

27.

On March 12, 2002, in response to their March 5, 2002 letter, I faxed correspondence (attached to my affidavit as Exhibit 2-A) to Messrs. Best and Koeppel requesting that they overnight the *Cantner* file materials to me.  In addition, I also requested that they return all documents such as safety and training manuals, rig brochures, and any other documents in their possession, which I had provided to them over the years of our long-standing attorney-client relationship.  I advised him I considered these materials to be confidential and propriety  Messrs. Best and Koeppel returned, at their expense, the *Cantner* file materials and very little of the confidential information Rowan provided to them over the period of their attorney-client relationship.  However, Messrs. Best and Koeppel still possess 2 files of general information, in all probability containing confidential information, and over 32 boxes of closed case files involving approximately 30 Rowan employees who were allegedly injured on the job.  They have refused to deliver (at their cost) those files to Rowan.  Although they unilaterally terminated their relationship with Rowan, they want Rowan to incur the expense of retrieving the files. Despite their refusal to return the files at their expense, I have recently made arrangements, at considerable expense to Rowan, to retrieve the files from Messrs. Best and Koeppel from a location in New Orleans on Thursday, April 17, and transport the files to Rowan's corporate offices in Houston, Texas.

10

28.

In a certified letter dated March 24, 2003, (attached to my affidavit as Exhibit 2-B) I wrote Messrs. Best and Koeppel requesting that they voluntarily withdraw as counsel of record in the Parker matter, as well as another matter pending in state court in Texas in which they represent another party adverse to Rowan.  Although I have had no direct response to my letter, Mr. Best sent a letter dated March 31, 2003 (attached to my affidavit as Exhibit 2-C) to Rowan's counsel in the Parker matter declining to voluntarily withdraw.

_____
**WILLIAM P. HEDRICK**

Houston, Texas, this __16th__ day of April 2003.

_____
**NOTARY PUBLIC**

> MELANIE A. SIARSKI
> MY COMMISSION EXPIRES
> APRIL 4, 2004

11

# EXHIBIT
# 2-A

# Rowan Fax Memorandum

**To:**   Peter S. Koeppel
**CC:** ✓Drew Zimmerman & Counsel File
**From:**   William P. Hedrick
**Date:** 3/12/2002
**Re:**   Cantner Matter

---

This will acknowledge receipt of your correspondence dated March 5, 2002, a copy of which is enclosed, and confirm our conversation of earlier this morning, wherein your firm declines present and future representation of Rowan.

As regards re-assignment of the referenced matter, that is a decision we have not yet made.  Accordingly, please forward the file to my attention by overnight means such as FedEx.

Additionally, you are requested to forward all documents such as safety and training materials, rig brochures and any other documents in your possession, excluding closed files, to my attention under separate cover. It goes without saying; we consider all of these materials to be confidential and proprietary and should not be retained by your firm in any form.

Sincerely,

1

# EXHIBIT
# 2-B

# ROWAN COMPANIES, INC.

2800 POST OAK BOULEVARD, SUITE 5450
HOUSTON, TEXAS 77056-6127

March 24, 2003

**VIA CERTIFIED MAIL**
RETURN RECEIPT REQUESTED

Mr. Laurence E. Best
Mr. Peter S. Koeppel
BEST KOEPPEL
1001 W. Loop South, Ste. 100
Houston, TX 77027

Re:   *Ronnie Parker v. Rowan Companies, Inc.*
      *Jeffrey Burch v. Rowan Companies, Inc.*

Dear Gentlemen:

We believe that your relationship as counsel to Rowan Companies, Inc. for over fifteen years and the information you learned about Rowan, its employees and equipment during that time, disqualifies you from representing Jeffery Burch and Ronnie Parker, plaintiffs in the above-referenced matters. Therefore, unless you immediately withdraw as counsel, we will be forced to file Motions to Disqualify.

In addition, in your letters of March 7 and 12, 2003, you acknowledged that Rowan files remain in your possession. It causes us grave concern that you have filed lawsuits against Rowan while continuing to possess its confidential information. Please return all Rowan files to us immediately and confirm by letter that you have retained no copies. We expect that these files will be returned *at your expense* because you chose to terminate our long-standing relationship and undertake representation of parties adverse to Rowan.

Sincerely

William P. Hedrick
HSE Manager

# EXHIBIT
# 2-C

# BEST KOEPPEL
## A PROFESSIONAL LAW CORPORATION

2030 St. Charles Avenue
New Orleans, Louisiana 70130
Telephone: (504) 598-1000
Facsimile: (504) 524-1024
- - - - - - - - -
1001 West Loop South, Suite 100
Houston, Texas 77027
Telephone: (713) 964-6840
Facsimile: (713) 622-5513

March 31, 2003

David A. Hurlburt
HURLBURT, PRIVAT & MONROSE
700 St. John Street, Suite 200
Lafayette, LA 70501

> RE:  Ronnie Parker v. Rowan Companies, Inc.
> Our Client - Ronnie Parker
> <u>Our File No. 0152-3-1378</u>

Dear Mr. Hurlburt:

We acknowledge Mr. Hedrick's letter of March 24, 2003. Please ask your client not to contact us directly in connection with matters in litigation.

We do not believe disqualification is appropriate, and suggest you file your motion. As to the files in our possession, these have been available to Rowan at any and all times since termination of our relationship with Rowan Companies Inc., last spring. Moreover, in response to Rowan's recent inquiry, we confirmed this. We have had no response regarding any arrangements for the transfer and they accordingly remain in our off-site storage facility. However, we have no intention of returning them at our expense. They remain available to Rowan should Rowan choose to collect them, and when Rowan chooses to collect them, you may rest assured we have made, and will make, no photocopies.

Sincerely,

Laurence E. Best

LEB/cam

# EXHIBIT
# 3

### BEST KOEPPEL
A PROFESSIONAL LAW CORPORATION

2030 St. Charles Avenue
New Orleans, Louisiana 70130
Telephone: (504) 598-1000
Facsimile:  (504) 524-1024
- - - - - - - - - - - - - -
1001 West Loup South, Suite 100
Houston, Texas 77027
Telephone: (713) 964-6840
Facsimile:  (713) 622-5513

March 5, 2002

Mr. William Hedrick
ROWAN COMPANIES, INC.
5450 Transco Tower
2800 Post Oak Boulevard
Houston, Texas  77056-6111

Dear Bill:

As we have told you on numerous occasions, it has been a pleasure to have been able to represent Rowan. Our very limited Rowan case load during the last several years coupled with recent changes in our firm practice, client base and a refocusing of our defense efforts on labor law, insurance coverage and excess matters have caused us to reluctantly conclude that it is no longer economically feasible to continue our relationship.

Our one remaining case, Canter vs. RCI, is in its infancy and we do not as yet have a trial date. New counsel should not encounter any difficulty undertaking the matter and there should be little or no redundancy of effort.  Please let us know to whom you assign this case to so that we may promptly transfer the file in an orderly and satisfactory matter.

Again, we thank you and remain . . .

Sincerely,

Laurence E.  Best
Peter S. Koeppel

LEB/PSK/rsf

# EXHIBIT
# 4

# BEST KOEPPEL
## A PROFESSIONAL LAW CORPORATION

2030 St. Charles Avenue
New Orleans, Louisiana 70130
Telephone: (504) 598-1000
Facsimile: (504) 524-1024
- - - - - - - - - -
1001 West Loop South, Suite 100
Houston, Texas 77027
Telephone: (713) 964-6840
Facsimile: (713) 622-5513

March 12, 2003

VIA FACSIMILE (713) 960-7511
and U.S. MAIL

Drew Zimmerman
Employer's Liability Litigation Manager
ROWAN COMPANIES, INC.
2800 Post Oak Boulevard, Suite 5450
Houston, Texas   77056-6127

Dear Drew:

Further to our recent exchange of correspondence, we have had our staff prepare and enclose herewith for you a listing of your company's files that remain in our off-site storage facility.   All files not listed have been previously discarded.

Additionally, while searching the storage facility and rearranging the boxes for release of these materials, members of our staff also found two folders of general information including rig brochures and the like, which were apparently erroneously moved to off-site storage in connection with our move of 2000, or subsequent move of 2001.  We thought these materials had been inadvertently discarded.  Given their discovery, they will also be furnished to you with the listed files.

The storage facility is Howard & Baronne Storage Center, 835 St. Joseph Street, New Orleans, Louisiana, and is open during regular business hours, Monday through Friday.  Please let us know when you will have movers appear at the facility to claim these files, and we will be certain to have personnel available to facilitate the transfer.  We will require a signed receipt.

Sincerely,

LAURENCE E. BEST

LEB/cam

# ROWAN FILES IN STORAGE:

May v. Rowan (0380-3-0342) → boxes 12-13

McCary v. Rowan (0380-5-0488) → box 14

Spillars v. Rowan (0380-6-0622) → box 30

Adams v. Rowan (0380-5-0987) → box 30

Bufford v. Rowan (0380-9-6784) → box 30

Dupuis v. Rowan (0380-4-0411) → box 36

Rayburn Robinson (0380-7-0718) → box 36

Billy G. Self (0380-7-0734) → box 36

Jonnie Stinson (0380-6-0587) box 42

Joel Neal (0380-6-0589) → box 42

Van Ngyen (0380-5-0556) → boxes 46-47

Strinson (0380-6-0587) → box 49

Turner (0380-7-0672) → boxes 71 & 97

Longley (0380-6-0663) → box 99

Hayes v. Rowan (0380-9-0922) → box 135

Rowan v. Willis (0380-6-0583) → box 142

Garland Reed (0380-7-0758) → boxes 167-169

Talley (0380-7-0756) → boxes 178-185

Mire (0380-6-0651) → box 236

Rowan v. Badeaux (0380-0-6852) → box 236

Elton Johnson (0380-0-0954) → box 238

Jason Fincannon (0380-0-1001) box 257

Samuel Starnes (0380-8-0812) → box 274

Childers (0380-0-7098) → box 289

Claude Robertson (0380-1-1050) → box 328

Scott Stephens (0380-1-1138) → box 367

# BEST KOEPPEL
### A PROFESSIONAL LAW CORPORATION

2030 St. Charles Avenue
New Orleans, Louisiana 70130
Telephone: (504) 598-1000
Facsimile: (504) 524-1024
- - - - - - - - - - - - -
4801 Woodway Drive, Suite 300 East #22
Houston, Texas 77056
Telephone: (713) 964-2600
Facsimile: (713) 965-0643

March 24, 2003

Mr. Drew Zimmerman
ROWAN COMPANIES, INC.
2800 Post Oak Boulevard
5450 Transco Tower
Houston, Texas 77056-6193

Dear Drew:

We have located three additional closed Rowan files, including John Farrar, Larry Longest, Otis Eugene Weir, and Walter John Smith. We will arrange to turn over these files to your designated representative from our off site storage facility.

With best regards, I remain...

Sincerely,

Laurence E. Best
Peter S. Koeppel

LEB/PSK/dnd

# EXHIBIT
# 5

### JOHN W. LEE, JR. P.A.
**ATTORNEY AT LAW**
**119 HARDY STREET**
**HATTIESBURG, MISSISSIPPI 39403-1470**

MAILING ADDRESS:                                                    OFFICE: 601-544-5601
P.O. BOX 1470                                                       FAX:    601-582-8733
HATTIESBURG, MISSISSIPPI 39403-1470

September 4, 2002

David A. Hurlburt
HURLBURT, PRIVATE & MONROSE
A Professional Law Corporation
700 St. John Street, Suite 200
Lafayette, LA 70501

Re:   Ronnie J. Parker

Dear David:

In order to prepare for our mediation and submitting Mr. Parker's position for the Mediator, it will be necessary that you forward to me a copy of Mr. Parker's Accident Report. Ronnie states that in December 2001 in a telephone conversation with Bill Hedrick that he requested a copy of the same, but that it was not furnished to him.

Also, it will be appreciated if Rowan will make an offer of settlement of Mr. Parker's claim prior to the mediation. This will go a long way in determining whether this mediation is a waste of time or if Rowan is serious in attempting to settle this claim prior to litigation being commenced.

Furthermore, please advise me if Rowan has any problems with Larry Best attending the mediation along with me on behalf of Mr. Parker.

Accordingly, please immediately furnish me with a copy of Mr. Parker's Accident Report; make an offer of settlement on behalf of Rowan; and advise of Rowan's position regarding Larry Best attending the mediation as scheduled in your office.

Very truly yours,

*[signature]*

JOHN W. LEE, JR.

JWLjr/ham

# EXHIBIT
# 6

## JOHN W. LEE, JR. P.A.
### ATTORNEY AT LAW
#### 119 HARDY STREET
#### HATTIESBURG, MISSISSIPPI 39403-1470

MAILING ADDRESS:
P.O. BOX 1470
HATTIESBURG, MISSISSIPPI 39403-1470

OFFICE: 601-544-5601
FAX:      601-582-8732

May 16, 2002

Rowan Companies, Inc.
Attention: Mr. William P. Hedrick
2800 Post Oak Boulevard
Houston, Texas 77056

Re:    Ronnie Joe Parker
       304 S. Ferrill Avenue
       Quitman, MS 39355

Dear Bill:

This will confirm our telephone conversation of this date at which time I advised you that I represent Ronnie Joe Parker regarding his claim for personal injuries he sustained on September 13, 2001 when he was injured offshore while employed by Rowan Companies, Inc.

It is my understanding that after you have an opportunity to review this claim, you will contact me after the Memorial Day week-end and advise me if this matter can be concluded amicably by settlement without the necessity of litigation..

With kindest personal regards, I am

Very truly yours,

JOHN W. LEE, JR.

JWLjr/ham
cc:    Mr. Ronnie Joe Parker

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **RONNIE PARKER** | * | **CIVIL ACTION NUMBER: 03-0545** |
| | * | |
| **VERSUS** | * | **SEC. R MAG. 3** |
| | * | |
| **ROWAN COMPANIES, INC.** | * | **JUDGE VANCE** |
| | * | |
| | * | **MAGISTRATE JUDGE KNOWLES** |

**************************************************************************

**ROWAN COMPANIES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL**

MAY IT PLEASE THE COURT:

Plaintiff's counsel, Laurence E. Best and Peter S. Koeppel (Best Koeppel) represented the Defendant, ROWAN COMPANIES, INC. (ROWAN), in over 60 cases, primarily defending Jones Act claims, during a period of approximately 15 years dating from 1987 until March 2002, approximately 6 months *after* the date of RONNIE PARKER'S accident on September 13, 2001, which is the subject of this lawsuit. Now Best Koeppel has switched sides and represents a ROWAN employee in a Jones Act claim against ROWAN. ROWAN, as a matter of professional courtesy, requested Best Koeppel to voluntarily withdraw as counsel for Plaintiff. (Exhibit 2, Hedrick Affd., ¶ 28) Following their refusal, ROWAN filed this motion to disqualify. In this memorandum, ROWAN demonstrates, with the factual intensity required by this circuit, that Best Koeppel's former

representation of ROWAN in substantially related matters prohibits them from taking an adverse position to ROWAN in this case.[1]

## I. The Rules Governing Disqualification

In federal court, motions to disqualify are determined by applying federal law. *In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992), *cert. denied*, 507 U.S. 912 (1993). Although federal courts may adopt state rules as their ethical standards, whether and how those rules are applied are a matter of federal law. *Id.* The U.S. District Court for the Eastern District of Louisiana (as well as the Middle and Western Districts) has adopted, as federal law, the Rules of Professional Conduct of the Louisiana State Bar Association. *See* LR 83.2.4 E&M; LR 83.2.4W.

Louisiana Rules of Professional Conduct 1.9 and 1.10 apply to this motion:[2]

Rule 1.9 CONFLICT OF INTEREST: FORMER CLIENT

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a)     Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b)     Use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

---

[1]     ROWAN, in a companion motion, requests an evidentiary hearing to introduce further evidence to support its disqualification motion. It also reserves the right to conduct discovery related to the motion.

[2]     The Louisiana State Bar Association's Ethics 2000 committee proposed amendments to the Rules of Professional conduct to conform them to the ABA model rules. The committee has made recommendations to the Louisiana Supreme Court; however, at the time of the filing of this motion, the Louisiana Supreme Court has not acted on the committee's recommendations.

Rule 1.10 IMPUTED DISQUALIFICATION: GENERAL RULE

(a)     While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9, or 2.2.

(b)     When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(b) that is material to the matter.

While Rules 1.9 and 1.10 are the primary rules providing guidance in disqualification cases, federal courts also look to national ethical rules, such as the ABA Ethical Canons. *FDIC v. United States Fire Ins. Co.*, 50 F. 3d 1304, 1312 (5th Cir. 1995). The following canons are persuasive:

Cannon 4:     A lawyer should preserve the confidences and secrets of a client.

Cannon 5:     A lawyer should exercise independent professional judgment on behalf of a client.

Cannon 9:     A lawyer should avoid even the appearance of professional impropriety.

Courts also take into account the standards of the profession, the public interest, and the litigants' rights. *In re Dresser Industries, Inc.*, 972 F. 2d 540, 543 (5th Cir. 1992). The Fifth Circuit specifically focuses on 3 factors when considering a disqualification motion:

1.     The appearance of impropriety in general;

2.     A possibility that a specific impropriety will occur; or

3.     The likelihood of public suspicion from the impropriety outweighs any social interest that will be served by the lawyer's continued participation in the case.

Page 3

*In re Dresser*, 972 F. 2d at 544; *FDIC*, 50 F. 3d at 1314; *Green v. Tulane Educational Fund*, 1998 WL 244424 (E.D. La. Jan. 23, 1998) (Vance, J.)

With these guidelines as a background, the Fifth Circuit applies a 2 prong "substantial relationship" test:

> A party seeking to disqualify opposing counsel on the ground of a former representation must establish 2 elements: (1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify; and (2) a substantial relationship between the subject matter of the former and present representations.

*American Airlines*, 972 F. 2d at 614, quoting *Johnston v. Harris County Flood Control Dist.*, 869 F. 2d 1565, 1569 (5th Cir. 1989), *cert. denied*, 493 U.S. 1019 (1990); *Green, supra.* In most cases, like this one, proving the first element is rather perfunctory.  A prior attorney-client relationship is easily established.

In considering whether the former and current representation are substantially related, the Fifth Circuit analyses the second prong of the test in light of 2 underlying concerns: (1) The duty to preserve confidences; and (2) the duty of loyalty to the former client. *American Airlines*, 972 F.2d at 618.  In light of these two underlying concerns, the Fifth Circuit does not require a party to prove the trial in the current matter will be tainted.  Instead, loyalty is the key.  Loyalty to the client is one of the most basic duties of an attorney.  *Strickland v. Washington*, 466 U.S. 668, 692 (1984).  As the court in *American Airlines* counsels:

> *A party* seeking to disqualify counsel under the substantial relationship test *need not prove that the past and present matters are so similar that a lawyer's continued involvement threatens to taint the* trial. Rather, the former client must demonstrate that the two matters are substantially related. Second, we adhere to our precedents in refusing to reduce the concerns underlying the substantial relationship test to a client's interest in preserving his confidential information.

Page 4

> *The second fundamental concern protected by the test is* not the
> public interest in lawyers avoiding "even the appearance of
> impropriety," but *the client's interest in the loyalty of his attorney.*
> 972 F.2d at 616. (Emphasis added)

By focusing on the loyalty of the attorney, the substantial relationship test is not solely

concerned with the adverse use of confidential information.  As the Fifth Circuit stated in *In re*

*Corrugated Container Anti-Trust Litigation*, 659 F.2d 1341, 1346 (5th Cir. 1981):

> Container's complaint is that the district court failed to explain how
> that advice would be relevant or substantially related to this action.
> The advice does not need to be "relevant" in the evidentiary sense to
> be "substantially related." It need only be akin to the present action in
> a way reasonable persons would understand as important to the issues
> involved.

The duty of loyalty is closely linked to the appearance of impropriety.  In other words, the

Fifth Circuit looks to whether the attorney has broken his trust with his former client.  In the

frequently cited case of *Brennan's Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 172 (5th Cir.

1979), the Fifth Circuit concludes:

> The obligation of an attorney not to misuse information acquired in
> the course of representation serves to vindicate the trust and reliance
> that clients place in their attorneys. A client would feel wronged if an
> opponent prevailed against him with the aid of an attorney who
> formerly represented the client in the same matter.

This 2 prong test involves a specific factual analysis of the *subject matters*, *issues*, and *causes*

*of action* presented in the former representation. *Duncan v. Merrill Lynch, Pierce, Fenner & Smith,*

*Inc.* 646 F. 2d 1020, 1029 (5th Cir. 1981), *cert. denied*, 454 U.S. 895 (1981).  *Duncan*, as well as

other cases in the Fifth Circuit, describe the test as a "painstaking analysis of the facts." *Id.*

Once a substantial relationship is found, disqualification is automatic. *American Airlines*,

972 F.2d at 614.  Two irrebuttable presumptions then follow.  First, "the court will irrebuttably

presume that relevant confidential information was disclosed during the former period of representation." *Ducan*, 646 F.2d at 1028; *Corrugated Container*, 659 F.2d at 1347.  Second, the court presumes confidences obtained by an individual lawyer will be shared with other members of his firm. Corrugated Container, 659 F. 2d at 1346; Green 1998 WL 24424, p.3.  Thus, any work performed by any attorney in the firm is relevant to the application of this substantial relationship test.  The Fifth Circuit has never recognized the possibility of a "Chinese wall" to rebut the presumption that confidences were not obtained by the individual lawyer. *Hampton v. Daybrook Fisheries, Inc.*, 2001 WL 1444933 (E.D. La. Nov. 14, 2001)(Vance, J.).  Even if there is no chance that confidential information might be used against the former client, disqualification is still in order, if the substantial relationship test is met.  *Id.*[3]

## II.  Applying the Substantial Relationship Test

**A.     Step 1:          An attorney-client relationship exists.**

The first element of the 2 prong test is easily satisfied.  Best Koeppel cannot dispute it had an attorney-client relationship with ROWAN.  That relationship existed for 15 years.  In fact, as recently as 2003, Best Koeppel listed ROWAN as a "representative client" in Martindale-Hubbell. See Exhibit 1, 7 *Martindale-Hubbell Law Directory* 2003 LA 246 B.

**B.     Step 2:          The present and former matters are substantially related.**

A comparison of the Parker case with Best Koeppel's prior representations of ROWAN reveals, without a doubt, they are substantially related.  When comparing the present and former

---

[3]      Even if the present and former matters are not substantially related, Rule 1.9(b) still mandates disqualification if the attorney uses "information relating to the representation to the disadvantage of the former client."  ROWAN urges Rule 1.9(b) as an alternative basis of disqualification as discussed in Section III.

representations, courts are influenced by a number of factors including: (1) The length and breadth of the relationship, *Corrugated Container*, 659 F. 2d at 1343; *Koch v. Koch Industries*, 798 F. Supp. 1525, 1538 (D. Ks 1992); (2) the fees earned by the attorney, *American Airlines*, 972 F. 2d at 621; *Corrugated Container*, 659 F. 2d at 1343, 1346-47; *Fortner v. International Diving & Consulting Services*, Inc., 1996 WL 50807 (E.D. La. February 8, 1996)(McNamara, J.); (3) the subject matters, issues and causes of action, *American Airlines*, 972 F. 2d at 628; *Duncan* 646 F. 2d at 1029; and (4) common witnesses and vessels. *Fortner*, 1996 WL 50807 at p. 2.

If there is any doubt the matters are substantially related, the court should disqualify the attorney. *Koch*, 798 F. Supp. At 1531; *Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F. 2d 221, 225 (7th Cir. 1978); *Emle Industries, Inc. v. Patentex, Inc.*, 478 F. 2d 562, 571 (2nd Cir. 1973) ("[T]he attorney's role ... is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case.")

The end result is that Best Koeppel breached its duty of loyalty to its former client. Quite simply, they have broken their trust with ROWAN. *American Airlines,* 972 F. 2d at 616; *Brennan's Inc.,* 590 F. 2d at 172.

### 1.    PARKER-the current matter

PARKER began his employment with ROWAN on February 27, 1997.  On September 13, 2001 (while Best Koeppel was still representing ROWAN in at least 1 matter and was still in possession of a lot of Rowan materials), PARKER claims he was injured while working as a floorhand on ROWAN's jackup drilling rig, the CECIL PROVINE, Rig 039.  He claims he injured his right arm when the cathead and the draw works on the rig malfunctioned.  His alleged injuries as a result of that incident include reflex sympathetic dystrophy to his right upper and lower

Page 7

extremities. He seeks general damages for mental and physical pain and suffering. He also seeks special damages for future medical expenses, past and future wage loss, and impairment of earning capacity. His causes of action include Jones Act negligence and unseaworthiness of the CECIL PROVINE. He also contends ROWAN negligently and/or intentionally failed to provide him with proper medical care following his injury. In addition, he also asserts a potential claim for maintenance and cure. (See generally Plaintiff's complaint)

Witnesses who may be deposed or called to testify in this matter include James Rawson (an offshore installation manager (OIM) on the CECIL PROVINE), Ray Cranford (an OIM aboard the CECIL PROVINE), and William P. Hedrick (HSE manager and company representative in most lawsuits). In defense of the case, ROWAN may call, as expert witnesses, Fred Liebkemann (mechanical engineer), Calvin Barnhill (petroleum engineering expert), Dr. Christopher Cenac (orthopedic surgeon), Dr. Cornelius Gorman (vocational rehabilitation expert), Dr. Randolph Rice (economist), and Stuart Wood (economist). Most, if not all of those expert witnesses, have been involved on numerous occasions as expert witnesses in cases in which Best Koeppel represented ROWAN over the past 15 years. (Exhibit 2, Hedrick Affd., ¶s 12-24)

### 2.     The prior representation

Mr. Best began representing ROWAN as far back as 1987. (Exhibit 2, Hedrick Affd., ¶ 5). Since that time, Mr. Best and later Mr. Koeppel and the firm of Best Koeppel continuously and systematically represented ROWAN in over 60 cases until March of 2002 (approximately 6 months after PARKER's incident), when Best Koeppel unilaterally terminated the relationship. *Id.* ¶s 5-6. In a letter dated March 5, 2002, Best Koeppel (Exhibit 3) notified William Hedrick at ROWAN (with whom Best Koeppel has had a long standing attorney-client relationship) of their desire to stop

representing ROWAN.  At the time, Best Koeppel represented ROWAN in *Cantner v. Rowan*, the

defense of a Jones Act claim by a ROWAN employee pending in state court in St. Mary Parish.  In

response, on March 12, 2002, Mr. Hedrick confirmed Best Koeppel's decision to decline present and

future representation of ROWAN (see Exhibit 2, Hedrick Affd., ¶s 25-27 and Exhibit 2-A, Rowan

fax memorandum dated 3/12/02).  In that memo, Mr. Hedrick requested that Best Koeppel overnight

the *Cantner* file materials to him.  In addition, he also requested that Best Koeppel return all

documents such as safety and training materials, rig brochures, and any other documents in Best

Koeppel's possession, which Mr. Hedrick had provided to Best Koeppel over the years of their long

standing attorney-client relationship.  Mr. Hedrick made it clear in no uncertain terms that those

materials were confidential and proprietary and could not be retained by the Best Koeppel firm in

any form.

Best Koeppel represented that it still had 2 files of general information and over 30 boxes of

case files involving numerous ROWAN employees who were allegedly injured on the job.  (Exhibit

4, Best Koeppel letters dated March 12 & 24, 2003) They refused to return those documents at their

expense.  Instead, ROWAN, at considerable expense to it, has made arrangements to retrieve those

files.  (Exhibit 2, Hedrick Affd., ¶ 27)

During their 15 year relationship ROWAN paid more than $2.8 million in fees to Best,

Koeppel and/or their firms - an average of over $187,000 per year.  (Exhibit 2, Hedrick Affd., ¶ 6)

*See American Airlines*, 972 F. 2d at 621; *Corrugated Container*, 659 F. 2d at 1343; *Fortner*, 1996

WL 50807, p.2 (billing records evidence of substantial relationship).

Of the approximately 60 cases in which Best Koeppel represented ROWAN, most involved

Jones Act, unseaworthiness and/or maintenance and cure causes of actions asserted by ROWAN

Page 9

employees - the same causes of actions asserted by PARKER in this case.  (Exhibit 2, Hedrick Affd.,

¶ 6-7)  See *American Airlines*, 972 F. 2d at 628 and *Duncan* 646 F. 2d at 1029 (comparing issues and

causes of action).  The majority of the prior representations involved ROWAN's offshore fleet of

mobile offshore drilling units (MODUs) which are similar in nature in that they are jack-up drilling

vessels.  (Exhibit 2, Hedrick Affd., ¶ 8)  At least 1of those prior cases even involved the CECIL

PROVINE, the same vessel where PARKER's accident occurred in this case.  *Id* at ¶ 20.  See

*Fortner*, *supra*, (noting the common barge in the former and prior representation).  In fact, Mr.

Koeppel inspected and photographed the CECIL PROVINE as recently as December 12, 2000 while

defending ROWAN in the *Fincannon* matter regarding an incident on that rig.  Mr. Koeppel

provided Mr. Hedrick at ROWAN with a confidential report commenting on the results of his

inspection and how it might impact ROWAN's defense in the *Fincannon* matter.  *Id* at ¶ 22.  In at

least 2 of those prior cases, James Rawson, a ROWAN rig manager, was involved as a potential

witness.  Rawson, who was assigned to the CECIL PROVINE at the time of PARKER's accident

is a potential witness in this case.  *Id* at ¶s 17, 23.

Three of the approximately 60 cases in which Best Koeppel previously represented ROWAN

illustrate their substantial relationship with the PARKER matter.  For example, Best Koeppel

defended ROWAN in the *Tally* matter filed in state court in January of 1998.  In October of 1997,

Mr. Tally became ill aboard the GILBERT ROWE (Rig 038), a MODU similar in nature to the

CECIL PROVINE (Rig 039) where Mr. Parker's accident occurred.  Like Mr. Parker, Mr. Tally

alleged Jones Act negligence, unseaworthiness, and maintenance and cure causes of action.  Mr.

Tally also alleged that ROWAN failed to provide him with necessary medical treatment and failed

to properly respond to his medical needs, which he contended aggravated his condition.  Those

allegations are similar to PARKER's allegations in paragraphs VI and VII of his complaint. Finally, both Tally and PARKER seek the same types of damages. (Exhibit 2, Hedrick Affd., ¶ 14)

In addition, Mr. Tally took ROWAN's corporate deposition. Mr. Hedrick was the designated corporate representative. The topics at the corporate deposition included ROWAN's policies and procedures for removing injured workers from the rig and for providing medical treatment to injured personnel on drilling rigs. Substantially similar issues are alleged in Mr. Parker's complaint. Both Messrs. Best and Koeppel assisted Mr. Hedrick in preparing for the deposition and both of them attended the deposition, representing ROWAN. *Id* at ¶ 15. Should PARKER's counsel take the corporate deposition of ROWAN in this matter, Mr. Hedrick will most likely again serve as the corporate representative. In addition, Mr. Hedrick may be a witness in the PARKER litigation. *Id* at ¶ 16. A number of the experts in the *Tally* matter have been retained as experts in this matter as well. *Id* at ¶ 19.

Best Koeppel also represented ROWAN in the *Fincannon* matter. Jason Fincannon, a ROWAN derrickman, was injured on or about May 17, 2000 aboard the CECIL PROVINE, the same MODU to which Mr. Parker was assigned. Mr. Fincannon later died from his injuries. His representatives filed suit against ROWAN in September of 2000. The suit was settled prior to trial and was dismissed around September 2001. The suit alleged Jones Act negligence and unseaworthiness causes of action - the same causes of action as asserted by Mr. Parker in this case. Mr. Hedrick served as the ROWAN contact person in the *Fincannon* matter. As with most other cases, he communicated with Best Koeppel on all facets of the litigation including potential trial strategy and settlement. He also attended the mediation in the *Fincannon* matter with both Messrs. Best and Koeppel. *Id* at ¶s 20-21.

The third illustrative case is the *Cantner* litigation in which Best Koeppel was representing ROWAN at the time they unilaterally terminated the long-standing attorney-client relationship. Cantner was a ROWAN roustabout who allegedly injured his knee aboard the ROWAN FORT WORTH, another MODU in ROWAN's fleet similar in nature to the CECIL PROVINE.  Mr. Cantner filed suit against ROWAN on or about November 5, 2001, approximately 4 months before Best Koeppel decided to terminate their relationship with ROWAN.  Like Mr. Parker, Mr. Cantner asserted Jones Act negligence and unseaworthiness causes of action.  He also seeks the same types of damages as Mr. Parker.  Finally, Drs. Cenac and Wood, and Messrs. Leibkemann and Barnhill are common experts in the PARKER and Catner suits. *Id* at ¶s 25-26.

Over the past 15 years, Best Koeppel's primary contact at ROWAN was Mr. Hedrick.  Mr. Hedrick usually serves as ROWAN's company representative and frequently testifies at trials.  Moreover, during their longstanding attorney-client relationship, Mr. Hedrick provided Best Koeppel with documents regarding ROWAN's safety practices and procedures.  He discussed with them trial strategies and tactics.  He routinely sought their advice and counsel on a number of issues.  He expected those attorney client communications to remain confidential under the cloak of the attorney client privilege.  Best Koeppel also had access to privileged claims files and were privy to highly confidential conversations with ROWAN's risk management. Mr. Hedrick even provided them with confidential and privileged information regarding calculation of maintenance and cure.  (Exhibit 2, Hedrick Affd., ¶s 3,4,9-11)

The insight Best Koeppel gained over the past 15 years gives them a material advantage in prosecuting PARKER's suit against their former client such that the playing field has been tilted. *Koch*, 798 F. Supp. at 1538-39 (tilting the playing field).  Best Koeppel knows the ins and outs of ROWAN's business; they know the key players; they know what types of documents exist even

Page 12

before they propound discovery; having represented ROWAN for so many years, they know ROWAN's strengths and weaknesses. They undoubtedly have a "leg up" over counsel who never represented ROWAN.

Whether Best Koeppel would use the information gained from representing ROWAN over the years against ROWAN (not to mention whatever may be stored on their computers electronically) is immaterial. The key is loyalty. *American Airlines*, 972 F. 2d at 618; *Brennan's*, 590 F. 2d at 172; *Fortner*, 1996 WL 50807, p. 2. As one court reasoned:

> Furthermore, the attorney should not place himself in a position where there may be the temptation to take advantage of information derived from confidential communications.

*U.S. v. Edwards*, 39 F. Supp. 2d 716, 724-25. (M.D. La. 1999)

An attorney's duty of loyalty to his client is rooted in the fundamental premise that an attorney must preserve the confidences of his client. *Edwards*, 39 F. Supp. 2d at 724. Over the years, ROWAN sought advice from Best Koeppel on similar causes of action (i.e. Jones Act, unseaworthiness and maintenance and cure issues) involving similar MODUs and even in at least one instance the same vessel. Best Koeppel cannot simply unilaterally terminate the relationship and sue ROWAN in a substantially related matter. The duty to preserve confidences survives after the relationship ends. It lasts from "cradle to grave." As such, courts not only disqualify attorneys from appearing in substantially related matters to protect against the adverse use of information, but also "to aid the frank exchange between attorney and client." *American Airlines*, 972 F. 2d at 619. Rowan would have been reluctant to confide in its counsel if it knew 6 months after Best Koeppel chose to end the relationship its counsel would "jump the fence" and file suit against it, regardless of whether its counsel actually used those confidences against it. *Id* at 620.

Page 13

Finally, Mr. Parker will not be prejudiced if the court disqualifies his counsel of record. Best Koeppel only recently filed suit on PARKER's behalf on February 20, 2003. When they became involved is unknown.[4]  To borrow a phrase from Best Koeppel when it declined to continue representing ROWAN in the Cantner matter, "the case is still in its infancy." In addition, Mr. Parker is also represented by Mr. John Lee, a Mississippi lawyer, who advised ROWAN of his representation on May 16, 2002. (Exhibit 6, letter of representation)  In fact, before suit was filed, ROWAN unsuccessfully mediated the case on September 6, 2002, during which Mr. Lee represented Mr. Parker. One can only surmise whether Mr. Parker and/or Mr. Lee selected Best Koeppel because of its prior relationship with ROWAN.

## C.    Illustrative Cases

At least 2 decisions from this district merit discussion. First, this court in *Fortner*, 1996 WL 50807 (E.D. La. February 8, 1996)(McNamara, J.), disqualified Plaintiff's counsel in a personal injury case based on much less compelling evidence than presented here. In that case, the Defendant, International Diving, moved to disqualify the Plaintiff's counsel, Alton Hall, and his law firm because of Hall's prior representation of International Diving and its affiliated companies. The court applied the substantial relationship test outlined in this memorandum; found that International Diving satisfied the test; and disqualified Plaintiff's counsel and his firm. Plaintiff's counsel had represented International Diving (or one of its related companies) in 3 previous personal injury actions, all of which involved the same barge as the current adverse representation. *Fortner*, p. 2. Although the *Fortner* matter involved a unique barotrauma injury to a diver, the court was persuaded

---

[4]     Presumably, Best Koeppel's involvement dates back to as early as September 2002 or even earlier.  In a letter dated September 4, 2002 (Exhibit 5) to ROWAN's counsel, PARKER's Mississippi counsel, John W. Lee, Jr., requested Larry Best's presence at the September 6, 2002 mediation.  ROWAN objected to Mr. Best's participation.

by the fact that all the prior representations were personal injury suits, and one even involved a diver. The court was also influenced by the fact that Fortner's counsel while previously representing the Defendant, had access to confidential communications and safety procedures and practices while representing those companies. *Id.* Accordingly, the court concluded that International Diving proved with "specificity the subject matters, issues, and causes of actions" common to the prior and current representations. *Id.*

The facts of the instant case are much more compelling. The court in *Fortner* disqualified Plaintiff's counsel based on only 3 prior representations over an unknown period of time. In this case, Best Koeppel represented ROWAN for approximately 15 years in over 60 cases, most of which were Jones Act personal injury claims. At least one of the cases involved the same vessel. Several of them involved the same fact witnesses and many involved the same experts. The vast majority involved the same causes of action.

Second, in opposition to the motion to disqualify, Best Koeppel may refer to this Court's decision in *Hampton v. Daybrook Fisheries, Inc.*, 2001 WL 1444933 (E.D. La. Nov. 14, 2001)(Vance, J.), a clearly distinguishable case. In *Hampton*, Daybrook moved to disqualify Hampton's counsel because David Abramson (a partner in the firm representing Hampton) represented Daybrook for 3 years (from 1992 to 1995) in various Jones Act personal injury cases while he was an associate at the Phelps Dunbar firm. *Hampton*, p. 1. In opposition to the motion, Abramson submitted an affidavit that he only performed routine tasks as an associate on the Daybrook cases and that the last time he represented Daybrook was 6 years prior to the filing of the Hampton case. *Id.* at p. 3. Applying the substantial relationship test, this Court denied the motion to disqualify. It found Defendant's affidavit in support of the motion to disqualify "factually inaccurate" and "so conclusory to be of little value on the substantial relationship issue." *Id.*

Page 15

The facts of Hampton are clearly distinguishable. Unlike Hampton where there was at least a 6 year gap between the current and prior representations, Best Koeppel unilaterally terminated its relationship with ROWAN 6 months *after* the date of RONNIE PARKER's accident and less than 1 year before filing suit. (ROWAN assumes Best Koeppel began its representation of PARKER at some earlier point in time, but has not yet been able to ascertain that date.) In addition, Best Koeppel represented ROWAN in over 60 cases over a 15 year period. During that time, ROWAN paid Best Koeppel over $2.8 million or, on average, more than $187,000 a year. ROWAN has shown (and will show at an evidentiary hearing) with specificity the subject matters, issues, and causes of actions in the former representation are substantially related to the PARKER litigation. Finally, unlike the Hampton case, Best Koeppel was, until recently,[5] still in possession of ROWAN's files from the previous representation as well as 2 folders of general information not related to specific cases. (Exhibit 4)

### III.   Alternatively, Best Koeppel should be disqualified under Rule 1.9(b).

ROWAN firmly believes it satisfies the substantial relationship test mandating Best Koeppel's disqualification under Rule 1.9(a) as that test has been formulated in the Fifth Circuit. However, if this Honorable Court disagrees and finds that the present and former matters are not substantially related, disqualification is still mandated under Rule 1.9(b), which does not contain a substantial relationship element. (See Rule 1.9(b), *supra*, pp. 2-3 this memo.) Rule 1.9(b) provides that a lawyer who has formally represented a client shall not use information relating to the representation to the disadvantage of the former client. (See also Rule 1.6(a) "A lawyer shall not

---

[5]     Arrangements have been made to retrieve those files on Thursday, April 17, 2003. (Exhibit 2, Hedrick Affd., ¶ 27)

reveal information relating to representation of a client unless the client consents after consultation....")

As Mr. Hedrick points out in his affidavit, he frequently conveyed to Best Koeppel confidential information about ROWAN's internal practices, policies, and procedures. He also provided them with ROWAN's confidential claims files; matters which he fully expected to remain confidential. From time to time, Mr. Hedrick sought the advice of Best Koeppel regarding other matters, such as maintenance and cure issues which were not necessarily in litigation. He provided them with a confidential study prepared by an expert retained by ROWAN regarding the rate of maintenance and cure. He also provided them with periodic updates of that study. Moreover, Mr. Hedrick sought the advice of Best Koeppel on important court decisions rendered in the maritime and employment law fields (as they related to personal injury claims) and how those decisions might affect ROWAN in the future. (Exhibit 2, Hedrick Affd., ¶s 9-11) Mr. Best even spoke at one of ROWAN's supervisor's training seminars. *Id.* at ¶ 11.

The information ROWAN imparted to Best Koeppel over the years of their long-standing attorney-client relationship could be used to ROWAN's disadvantage in the PARKER litigation, in violation of Rule 1.9(b). The potential use of this information to the disadvantage of ROWAN serves as an additional basis for disqualification. At the very least, it raises the appearance of an impropriety which justifies disqualification. *Hampton*, p. 4.

### IV. Conclusion

This painstaking factual analysis required in this circuit clearly demonstrates that the PARKER matter is substantially related to Best Koeppel's prior representation of ROWAN. For this reason, the court should grant ROWAN'S motion and disqualify Best Koeppel from representing Mr. Parker in this case.

Respectfully submitted,

**HURLBURT, PRIVAT & MONROSE**
(A Professional Law Corporation)

_____
**DAVID A. HURLBURT, T.A.** - #13912
**GEORGE D. ERNEST III** -#16903
Post Office Drawer 4407
Lafayette, Louisiana 70502
(337) 237-0261
(337) 237-9117
**Attorneys for ROWAN COMPANIES, INC.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing has on this date been deposited into the U.S. Mail, postage prepaid, and properly addressed to all known counsel of record.

Lafayette, Louisiana this _____ day of April, 2003.

_____
**GEORGE D. ERNEST III**

Page 18

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

| | | |
|---|---|---|
| **RONNIE PARKER** | * | **CIVIL ACTION NUBER: 03-0545** |
| | * | |
| **VERSUS** | * | **SEC. R MAG. 3** |
| | * | |
| **ROWAN COMPANIES, INC.** | * | **JUDGE VANCE** |
| | * | |
| | * | **MAGISTRATE JUDGE KNOWLES** |

**************************************************************************

## NOTICE OF HEARING

Please take notice, that Defendant, ROWAN COMPANIES, INC.'s Motion to Disqualify Plaintiff's counsel will be heard on August 6, 2003 at 10:00 a.m.

Respectfully submitted,

**HURLBURT, PRIVAT & MONROSE**
(A Professional Law Corporation)

_____
**DAVID A. HURLBURT, T.A. - #13912**
**GEORGE D. ERNEST III -#16903**
Post Office Drawer 4407
Lafayette, Louisiana 70502
Telephone: (337) 237-0261
**Attorneys for ROWAN COMPANIES, INC.**