

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RONNIE PARKER** | * | **CIVIL ACTION NUMBER: 03-0545** |
| | * | |
| **VERSUS** | * | **SEC. R MAG. 3** |
| | * | |
| **ROWAN COMPANIES, INC.** | * | **JUDGE VANCE** |
| | * | |
| | * | **MAGISTRATE JUDGE KNOWLES** |

*****************************************************************************

### ROWAN'S REPLY MEMORANDUM
### IN SUPPORT OF MOTION TO DISQUALIFY

Rowan's motion to disqualify plaintiff's counsel is set for oral argument on November 12, 2003. ROWAN just recently received Best Koeppel's (BK's) opposition memorandum on November 5, 2003 (and a complete copy with exhibits on November 6th) and another exhibit (the Alston affidavit) late on November 7. It takes this opportunity to respond and demonstrate the compelling reasons why the motion to disqualify should be granted.

1. **The Background Facts**

In its background facts, BK goes to great length to justify the termination of the longstanding attorney-client relationship it had with ROWAN. They even suggest that ROWAN "constructively" terminated them. While ROWAN denies the ad hominem arguments, any reasons for terminating the relationship are irrelevant and do not factor into the disqualification equation. It in no way

-1-

justifies taking an adverse position to ROWAN. Likewise, it cannot circumvent the of the ethical rules governing disqualification.[1]

2.  **Appearance of impropriety is still relevant.**

On pages 8-13 of its brief, BK argues the appearance of impropriety is irrelevant to the Court's inquiry, primarily relying on language in the *American Airlines* decision. The clear weight of authority demonstrates appearance of impropriety is not only still relevant, but of great concern. The following case excerpts, including recent ones from this Court, illustrate the point:

> Of greater concern to the Court is the appearance of impropriety, the duty to preserve confidences, and the duty of loyalty to a former client. *Green v. Tulane Educational Fund*, 1998 WL 24424 (E.D. La. Jan. 23, 1998)(Vance, J.)(quoting *American Airlines*)

> Though the district court based its decision on Canons, 4, 5, and 9 of the Code, *our focus is on Canon 9 [avoiding the appearance of impropriety] only.* In re Corrugated Container, 659 F. 2d 1341, 1345 (5th Cir. 1981)(emphasis added)

> The Fifth Circuit has considered the following factors in the disqualification analysis: Whether the conflict has (1) the appearance of impropriety in general . . . .
> *Hampton v. Daybrook Fisheries, Inc.*, 2001 WL 1444933 (E.D. La. Nov. 14, 2001)(Vance, J.)(At the end of its analysis, the Court returned to Canon 9.)

> Under Fifth Circuit precedent, the link between loyalty and the appearance of impropriety is clearly recognized.
> *Fortner v. International Diving & Consulting Services, Inc.*, 1996 WL 50807 (E.D.La. Feb. 8, 1996)(McNamara, J.)

---

[1]  BK also portrays ROWAN as employing "strategic machinations" to thwart their defense of this motion. (See BK's lengthy footnote 1, pages 5-6 of it memo.) The facts are: (1) BK requested a continuance of the disqualification hearing; (2) ROWAN asserted well founded objections to BK's discovery; (3) The Magistrate Judge and the district court upheld virtually all of ROWAN'S objections; and (4) BK at least twice postponed ROWAN'S corporate deposition (first pending a ruling from the Magistrate Judge; and second pending a decision on its appeal of the discovery ruling.)

> The Fifth Circuit has considered the following factors in the disqualification analysis: Whether the conflict has (1) the appearance of impropriety in general . . . .
> *Underwriters Ins. Co. v. L & L Marine Transportation, Inc.*, 2001 WL 1414914, p. 1 (E.D. La. Nov. 9, 2001)(Vance, J.)

> Among the factors we have considered in the past are "whether a conflict has (1) the appearance of impropriety in general . . . ."
> *FDIC v. U.S. Fire Ins. Co.*, 50 F. 3d 1304, 1314 (5th Cir. 1995)

The other 2 factors the Fifth Circuit and the Eastern District courts take into consideration are (2) a possibility [not a probability] that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any interest served by the lawyer's continued participation in the case. *U.S. Fire Ins. Co.*, 50 F. 3d at 1314; *Dresser*, 972 F. 2d at 544.

**3.   Length of relationship and fees earned are relevant.**

BK accuses ROWAN of "muddling" the issues by focusing on the length of the relationship and fees earned by BK, claiming such factors are irrelevant. If irrelevant, why have the Courts referred to the length of the relationship and the fees earned by the prior counsel? *American Airlines*, 972 F.2d at 621; *Corrugated Container*, 659 F.2d at 1343. Such factors are not the only consideration, but they are a relevant consideration. As the Fifth Circuit has often said, "The rule of disqualification is not mechanically applied in this circuit." *Church of Scientology of California v. McLean*, 615 F. 2d 691, 693 (5th Cir. 1980).

**4.   BK's prior representation of ROWAN is substantially similar to the Parker matter.**

BK contends ROWAN fails to satisfy its burden of proof that BK's former representation of Rowan is substantially related to the Parker matter. BK contends ROWAN has only shown superficial similarities between the cases. ROWAN'S overwhelming evidence stands in sharp contrast to this Court's correct decision in *Hampton* and the Fifth Circuits decision in *Duncan*

(where the courts found no substantial relationship based on generalities and conclusory statements). The Hedrick Declaration (Exh. 7) delves into specific details and goes far deeper into the facts. For example, BK's representation of ROWAN in the *Fincannon* matter involved the same vessel (the CECIL PROVINE) where Parker was injured. A comparison of the CECIL PROVINE crew lists (Exhs. 7-G and 7-H referred to in ¶ 16 of the Hedrick Declaration) for the dates of the *Fincannon* and Parker incidents shows 7 ROWAN crew members who were on the vessel on the day of both incidents.[2] Of those, BK interviewed and/or deposed 4 of them: Andrews, Fletcher, Teague, and Cranford. As crew members, they are potential witnesses in Parker. In fact, BK, in answer to ROWAN'S Interrogatory 20 (Exh. 10), specifically lists 2 of those witnesses by name (Cranford and McNease) as potential trial witnesses in Parker. They list 2 additional common crew members by job category - the driller (John Russell) and tourpusher/toolpusher (Arthur Thornton).

Additional factual similarities are demonstrated in BK's representation of ROWAN in the *Talley* case. (Exh. 7, Hedrick Dec., ¶ 17) Not only did the *Talley* case involve the same type, size, and class of rig, the 2 cases involved similar issues (Jones Act negligence, unseaworthiness, maintenance and cure, failure to provide proper medical treatment, and failure to respond to medical needs). The comparison of subject matters, issues, and causes of action are variables in the disqualification equation. See *Duncan*, 646 F. 2d at 1029. Again, some of the witnesses are the same. James Rawson (the rig superintendent in *Talley* and the rig manager in *Parker*) was deposed, not once, but twice in *Talley*. (Exh. 7, Hedrick Dec., ¶ 17, and Exh. 7-J(1) and 7-J(2), Rawson deposition transcripts.) Each time either Messrs. Best and/or Koeppel met with him prior to the

---

[2] The common crew members are Cleveland Andrews, Jason Cranford, Lonnie Fletcher, Barry McNease, Christopher Mose, James Rawson, John Russell, Edmond Savoie, John Teague, and Arthur Thornton.

depositions, prepared him for the depositions, told him they were representing him and ROWAN, and defended the deposition on Rawson's behalf. (Exh. 8, Rawson Dec.) Rawson is a potential witness in Parker (Exh. 2, Hedrick Affd., ¶ 18)[3]

In addition, Mr. Hedrick was deposed as the ROWAN corporate representative in *Talley*. His deposition (Exh. 7-K) addressed a number of issues, including maintenance and cure, and medical treatment after an incident, issues which are common to the Parker litigation. Mr. Koeppel prepared him for that deposition, represented Mr. Hedrick at the deposition, and subsequently provided Mr. Hedrick with a summary of the deposition (Exh. 7, Hedrick Dec., ¶ 17). Mr. Hedrick is a likely witness in the Parker litigation. In fact, BK refused to admit in response to ROWAN'S Request for Admission 31 that Ronnie Parker would not call Mr. Hedrick as a witness. (Exh. 10)

Mr. Hedrick's declaration also provides explicit factual detail regarding the numerous other cases in which BK represented ROWAN. Those are summarized in paragraph 12 and Exhibit 7-E.[4] BK represented ROWAN in 11 other cases involving suits by floormen - the same job classification as Parker. They represented 6 other cases involving fellow drill crew members and 25 cases involving roustabouts. Five cases involved arm injuries. (Parker claims an injury to his arm.) BK represented ROWAN in over 54 personal injury cases, 37 of which were either on the

---

[3]    Mr. Koeppel (¶ 9) states meetings with Rowan witnesses were not confidential. His statement is in stark contrast to the declarations of Rawson and Hedrick. It also runs counter-intuitive to an attorney's meeting with a defendant's own employees, especially Mr. Hedrick who falls squarely within the "control group" of management. It also flies in the face of common sense. The court, to be sure, has seen untold numbers of disputes over discoverability of statements taken by attorneys of their clients' own employees. The meetings are clearly privileged.

[4]    Along with the summary in Exhibit 7-E, ROWAN attaches backup documentation from which the summary was compiled. This documentation includes complaints, docket sheets, incident reports, and other data.

CECIL PROVINE or similar rigs. In total, BK handled cases for ROWAN involving 11 rigs, including the CECIL PROVINE and 10 other rigs of the same type, size, and class as the CECIL PROVINE. (Exh. 7, Hedrick Dec., ¶ 11, and Exh. 7-D)

5.  **The substantial relationship test.**

BK advocates an exacting standard such that the similarities must be so precise that an attorney can only be disqualified in a virtually identical case. As the Fifth Circuit has stated, a party "need not prove that the past and present matters are *so similar* that a lawyer's continued involvement threatens to taint the trial." *American Airlines*, 972 F. 2d at 616. (Emphasis added). Instead of viewing the test from an evidentiary standpoint, as does BK, the courts view substantial relationships "in a way reasonable persons would understand as important to the issues involved." *Corrugated Container*, 659 F. 2d at 1346. As BK concedes and many of the Fifth Circuit cases point out, the duty of the attorney to his former client is a key factor. The detailed factual evidence provided by ROWAN demonstrates that the matters are indeed substantially related.

In arguing the *Talley* and *Parker* cases are not substantially related, BK claims the cases are different in terms of the allegation of improper medical treatment provided to injured employees because, in *Talley*, the facts involved an allegation of failing to recognize the severity of Talley's injury and provide him with proper medical care on the rig, whereas, in *Parker*, the "only contention" is that a ROWAN employee, while off the rig, failed to have a prescription filled that allegedly aggravated his condition. Regardless of whether the alleged breach of the maritime obligation of cure occurred on or off the rig is irrelevant. Both cases involved the common allegation of failure to provide proper medical treatment to an injured seaman once he becomes ill

in the service of the ship.[5] According to BK's interpretation of the substantially similar standard, cases could only be substantially similar if they involved an identical injury caused by the same equipment, in the same method, and by the same people. Such an interpretation would reduce the ethical rule from the "same or substantially similar" matter to only the "same" matter.

BK also argues that *Parker* is different from the other cases because *Parker* involves the case of "certain and clear liability" as evidenced by the amount of a settlement offer made by ROWAN (BK Exh. 1, Best affd., ¶ 24, p. 12; BK Exh. 2, Koeppel affd., ¶ 5, p. 3) Such statements are nothing more than self-serving opinions when no substantive discovery has taken place. Further, any offers of settlement are not evidence of liability and are inadmissible under FRE 408.[6] BK's narrow argument is that Parker can only be substantially similar to other cases involving an allegation of a malfunction of the cathead and draw works on the same rig. However, inherent in any case involving an allegation of defective of equipment are issues potentially involving maintenance of equipment, repair of equipment to prevent malfunctions from occurring, and reporting them to the proper personnel when they do occur.

BK also attempts to downplay the significance of the maintenance study. They claim that the study is no more than a market survey of the cost to maintain an injured seaman.[7] Mr. Best could

---

[5] Mr. Best's affidavit limits, at least at this stage, the alleged failure to provide adequate medical care to that one particular incident. Whether Parker's counsel will allege other acts after discovery is unknown. It remains a possibility, unless counsel is willing to stipulate that it will conduct no discovery on the medical treatment issue and stipulate that this one incident is the sole and only basis for their allegation in their notice pleadings in federal court.

[6] ROWAN has filed a motion to strike this as well as other inadmissible portions of the affidavits.

[7] Oddly enough, BK's counsel argued before the Magistrate Judge that they needed copies of the maintenance studies because they did not know what they contained. Now, Mr. Best's

not have obtained the detailed knowledge of the contents of the study as set forth in his affidavit if he had not previously represented ROWAN. The information BK gained from this study and its periodic updates is substantially related to *Parker*. Prior to BK's involvement in this case, one of the issues discussed between ROWAN'S counsel and Parker's counsel, Mr. Lee, was the appropriate rate of maintenance. (See Hurlburt 9/10/02 letter to Lee, Exh. 14, attached hereto) Thus, one of the issues raised in *Parker* is the rate of maintenance. The maintenance study, which Mr. Best was privy to, may have a bearing on the outcome on that issue.

BK also downplays the significance of the prior legal opinion given by Mr. Best to ROWAN on the discovery of corrective action forms and a legal opinion on the self-critical analysis privilege. BK asserts (p. 33) that it recalls no specific retention regarding this issue. Although Mr. Best recalls only one instance involving a brief discussion about corrective action forms (Best affd., ¶ 24) he contradicts himself contending that it was a "routine, *recurrent* evidentiary issue." Mr. Hedrick states (Exh. 7, ¶ 4, p. 2) a corrective action form was issued for the Parker incident. In rebuttal, ROWAN submits Exhibit 15[8] consisting of a research memo dated September 27, 2000; Mr. Best's letter opinion dated September 28, 2000; and BK's fee bill showing the substantial amount of time spent on the subject matter. Any consideration by ROWAN in Parker regarding the discovery of the corrective action form will necessarily involve the legal opinion given by Mr. Best to ROWAN on the same subject matter. Mr. Best's attempt to minimize the significance of the legal opinion by referring to it as a "brief discussion" consisting of "nothing more than that which was available

---

affidavit provides significant detail of the contents of the confidential and proprietary study.

[8]In a separate motion, Rowan submits the exhibit under seal for the court's in camera inspection to preserve confidentially and the attorney/client privilege.

through routine legal research" and by asserting it is irrelevant because *Parker* is a case of "clear and certain liability" is of no moment. The important fact is Mr. Best gave a legal opinion to ROWAN regarding the assertion of an evidentiary privilege involving a document relevant to the cause of Parker's incident.[9] BK's legal opinion is not only relevant to the substantial relationship issue, but also is relevant to a Rule 1.9(b) analysis demonstrating information which could be used to Rowan's detriment.

Finally, BK argues the commonality of experts is not evidence of any substantial similarity. BK even suggests ROWAN should retain different experts. (memo, p. 28; BK Exh. 1, Best Affd., ¶ 11, p. 7) ROWAN is free to retain any experts it desires; it should not be compelled to hire different experts so as to avoid BK's representation dilemma. The subject matter of the experts will undoubtedly be the same. The issues regarding their qualifications, past experience, and past opinions will be relevant to their testimony and credibility at trial. As a specific example, the testimony of economic experts will address the common issues of salaries and wages of ROWAN employees in similar situations, the potential for advancement in the company, and benefits such as health insurance, stock options, and retirement benefits.

6. **BK's affidavits opposing the disqualification motion.**

The affidavits of Messrs. Koeppel and Best are replete with legal conclusions, broad general statements, inconsistencies, and inadmissable evidence.[10] For example, Mr. Koeppel (Exh. 2, ¶18) makes a self serving claim that after over 15 years of representing Rowan (in over 70 cases) he was

---

[9] BK's suggestion that ROWAN manufactured the corrective action form "for no purpose other than to try to create an impression of a relationship" is insulting.

[10] The inadmissable evidence is addressed in Rowan's separate motion to strike portions of the affidavits.

not "able to discern any over riding approach of the company toward litigation, negotiation or settlement." It defies logic and strains credibility that after representing someone for such a long period of time BK gained no insight whatsoever. Such a conclusory statement stands in contrast to Rowan's exhibits (particularly Exhibit 7A and 7B) demonstrating the subject matters of litigation practices and the frequency of the communications between Rowan and BK regarding such issues.

Finally, there remains the unsettled issue of closed files. Mr. Best (Exh. 1, ¶29) refers to the 12 cases in which Best Koeppel represented Rowan and had not returned closed files. Mr. Best claims the firm twice had clerks search for files and states: "These files were not found during the two searches and I believe it is reasonable to conclude they no longer exist." The statement is inaccurate. After first claiming he did not have some of the files, he later said he did. (Rowan's Exh. 7-Q). Now he says he doesn't. As a further contradiction, Mr. Koeppel as recently as October 24, 2003 located 4 additional closed files as well as other general materials regarding their prior representation of Rowan. (See Rowan's Exhibit 7-S). The contents of the 3 boxes of voluminous information returned by Mr. Koeppel is set forth in Exhibit 12, the declaration of Rowan's counsel's staff member itemizing their contents.

7. **Rule 1.9(b) and adverse use of information.**

While Rule 1.9(a) calls for the disqualification of counsel when the current and former representations were substantially related, Rule 1.9(b) prohibits a lawyer from using *information* to the disadvantage of the former client:

> A lawyer who has formerly represented a client in a matter shall not thereafter...(b) use *information* relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known. (Emphasis added).

BK paraphrases Rule 1.9(b) and adds the term *confidential*, transforming the adverse use of *information* into the adverse use of confidential information. The word *confidential* appears nowhere in Rule 1.9(b). BK contends Rowan's argument to the contrary is based on outdated standards and misapplication of precedent. They suggest that the Fifth Circuit's seminal decision on disqualification in *Brennan's* is outdated since the Model Rules have replaced the Model Code. However, *Brennan's* has not been overruled and continues to be cited by the courts. At least one district court has cited *Brennan's* for the very proposition that the omission of the word "confidence" or "secret" was deliberate. See *U.S. v. Edwards*, 39 F.Supp.2d 716, 731 (M.D. La. 1999). Moreover, Rule 1.9(b) has not been amended to insert the word confidential. In fact, Louisiana's Rules of Professional Conduct frequently refer to *information* without the *confidential* qualifier.[11] The over riding consideration goes back to the issue of loyalty. (Louisiana Rule 1.7 "Loyalty is an essential element in the lawyer's relationship to a client."). Simply put, an attorney breaches his trust with his former client if he uses information against that client in a later proceeding.

For these reasons, and for the reasons asserted in its original memorandum, ROWAN respectfully moves the Court to disqualify plaintiff's counsel.

---

[11]Rule 1.6 ("a lawyer shall not reveal *information* relating to the representation of a client..."); Rule 1.8 ("furthermore, a lawyer may not exploit his representation of a client or *information* relating to the representation to the client's disadvantage."); Rule 1.8(b) ("a lawyer shall not use *information* relating to representation of a client to the disadvantage of the client unless the client consents of the consultation.").

Respectfully submitted,

**HURLBURT, PRIVAT & MONROSE**
(A Professional Law Corporation)

**DAVID A. HURLBURT, T.A.** (#13912)
**GEORGE D. ERNEST III** (#16903)
700 St. John Street, Suite 200
Post Office Drawer 4407
Lafayette, Louisiana 70502
Telephone:  (337) 237-0261
Facsimile: (337) 237-9117
**Attorneys for ROWAN COMPANIES, INC.**

# ROWAN'S EXHIBIT 14

**HURLBURT, PRIVAT & MONROSE**
(A PROFESSIONAL LAW CORPORATION)
700 ST. JOHN STREET, SUITE 200
LAFAYETTE, LOUISIANA 70501

DAVID A. HURLBURT
GEORGE R. PRIVAT
M. BLAKE MONROSE*
SHANNON SEILER DARTEZ
GEORGE D. ERNEST III †
KAREN J. KING

*ALSO ADMITTED TO
PRACTICE IN COLORADO
†ALSO ADMITTED TO
PRACTICE IN TEXAS

September 10, 2002

(VIA FAX)

P.O. DRAWER 4407
LAFAYETTE, LOUISIANA 70502
TELEPHONE (337) 237-0261
TELEFAX (337) 237-9117

WRITER'S DIRECT E-MAIL:
david.hurlburt@hpmatty.com


John W. Lee, Jr.
Attorney at Law
119 Hardy Street
Hattiesburg, MS 39403-1470

    Re:    Ronnie Parker vs. Rowan Companies, Inc.

Dear John:

    As you are aware, Rowan is paying maintenance to Mr. Parker. So that Rowan can completely evaluate any obligation it may have for any continued payment of maintenance, it is necessary for your client to provide us with some specific information. Please, accordingly, consult with Mr. Parker and provide us with the following information:

(1) Does Mr. Parker presently live in a home, mobile home, or apartment?

(2) If Mr. Parker lives in an apartment, what is the amount of his monthly rental obligation?

(3) If Mr. Parker lives in a house or mobile home, does he own his residence or is he renting same? If he is renting what is the amount of his monthly rental obligation?

(4) When did Mr. Parker begin to occupy the home in which he is presently residing?

(5) Is the home in which Mr. Parker is residing the same home he was residing in on September 13, 2001?

(6) At the time of the incident on September 13, 2001, please identify by name, age, and relationship to Mr. Parker, of all individuals who were occupying his home with him?

(7) Presently please provide the names, ages, and relationships to Mr. Parker, of all individuals residing in his home?

Mr. John W. Lee, Jr.
September 10, 2002
Page 2

(8) If Mr. Parker owns his own home please indicate the following.

    (a) Whether there is a mortgage on it?

    (b) If there is a mortgage, how much are the monthly mortgage payments alone?

    (c) If mortgaged, does Mr. Parker pay any escrow amounts per month, and if so, how much?

    (d) If Mr. Parker owns his own home does he pay any homeowner's insurance on a monthly or annual basis, and if so, what amount is paid for what period of time?

    (e) As to any mortgage Mr. Parker may have on his home, are there any co-signers or co-obligors on that mortgage? If so, please identify by age and relationship who such co-signers or co-obligors are.

    (f) Is Mr. Parker's wife employed? If so, please identify by whom she is employed and the wage rate at which she is paid.

    (g) What is the average monthly amount you spend for utilities? (Included in this should be water, gas, and/or electricity.) Please also identify the utility service provider(s).

    (h) What are the real estate taxes? Are they included in any escrow amount?

(9) Please provide your average monthly household expenses for food.

(10) Please identify all individuals who contribute toward the payment of monthly food expenses.

(11) Are there any other expenses which you feel should appropriately be considered by Rowan in consideration of any maintenance obligation it might have? If so, please identify all such items and the daily, weekly, or monthly average cost of such items.

    John, upon receipt of the information requested above, Rowan will undertake a review of any appropriate expenses and, concomitantly, its maintenance obligation if any. Additionally, we would like to see the support documentation such as mortgages, rental agreements, utility bills and the like.

Mr. John W. Lee, Jr.
September 10, 2002
Page 3

With kind regards, I am

Sincerely,

David A. Hurlburt

DAH/sh

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RONNIE PARKER** | * | **CIVIL ACTION NUMBER: 03-0545** |
| | * | |
| **VERSUS** | * | **SEC. R MAG. 3** |
| | * | |
| **ROWAN COMPANIES, INC.** | * | **JUDGE VANCE** |
| | * | |
| | * | **MAGISTRATE JUDGE KNOWLES** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copies of the documents listed below have been hand delivered to counsel for Best Koeppel, Mr. Stephen Bullock, at Stone Pigman Walther Wittmann, L.L.C., 546 Carondelet Street, New Orleans, LA 70130 on November 10, 2003.

(1) Rowan Companies, Inc.'s Motion for Expedited Hearing on Motions to Strike in Connection with Motion to Disqualify Plaintiff's Counsel and Incorporated Memorandum and proposed Order;

(2) Rowan Companies, Inc.'s Motion to Strike Affidavit and Exclude Expert Testimony and Notice of Hearing;

(3) Rowan Companies, Inc.'s Memorandum in Support of its Motion to Strike and Exclude Expert Testimony;

(4)   Rowan Companies, Inc.'s Motion and Incorporated Memorandum to File Memorandum in Excess of Page Limit and proposed Order;

(5)   Rowan Companies, Inc.'s Motion and Incorporated Memorandum for Leave to File Exhibit under Seal For in Camera Inspection and proposed Order;

(6)   Rowan Companies, Inc.'s Motion and Incorporated Memorandum for Leave to File Reply Memorandum and proposed order; and

(7)   Rowan Companies, Inc.'s Reply Memorandum in Support of Motion to Disqualify.

_____
**DAVID A. HURLBURT**